Dewey IVEY, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–744.

United States Court of Veterans Appeals.

Submitted Oct. 22, 1991.

Decided April 28, 1992.

Dewey Ivey, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Carolyn F. Washington, Washington, D.C., were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Associate Judges.

MANKIN, Associate Judge, filed the opinion of the Court, in which NEBEKER, Chief Judge, joined. STEINBERG, Associate Judge, filed a separate concurring opinion.

MANKIN, Associate Judge:

Veteran, Dewey Ivey, appeals a March 22, 1990, decision of the Board of Veterans' Appeals (BVA or Board), which denied entitlement to service connection for residuals of an injury to the left scrotum. We find that the BVA erred in reviewing the case de novo, when the Department of Veterans Affairs (VA) Regional Office (RO) found that the evidence submitted by appellant created no new factual basis for allowing service connection. We find that the Secretary of Veterans Affairs (Secretary) prevented the veteran from presenting new and material evidence to reopen his claim by failing to fulfill the VA's duty to assist the veteran in developing his claim. Accordingly, the Secretary's motion for summary affirmance is denied, the BVA decision on appeal is vacated, and the case is remanded to the BVA for further development consistent with this Court's opinion, the concurring opinion notwithstanding.

## I. FACTUAL BACKGROUND

Dewey Ivey served in the Marine Corps from February 17, 1956, to February 16, 1958. On June 12, 1957, he ran into the corner of a lowered flap on an aircraft. He experienced sharp pain in the left scrotum and noted swelling and discoloration. Ivey was treated with ice packs, bed rest, a scrotal support, and discharged after two days. R. at 7. There was no notation of this injury made in the records of his separation from service medical examination, and his "G–U System" [genitourinary system] was noted to be "normal". R. at 11–13.

On January 17, 1984, the VA Regional Office (VARO) in Muskogee, Oklahoma received his first request for service-connected disability for the injury to his scrotum and for exposure to nuclear radiation. R. at 15–18. In the statement in support of his claim, he mentioned that he was treated at a duty station at El Toro Marine Base in Santa Ana, California and had been seeing a urologist, Dr. D.W. Buntley, for about eleven months concerning a urological problem, but had not sought medical treatment for nuclear radiation exposure. R. at 19–20. No medical examination was performed at that time, and no private medical records were obtained. The rating decision of March 22, 1984, denied service connection for the scrotal injury and for the urological problem due to radiation exposure in the absence of continuity of symptomatology. R. at 21.

On October 20, 1988, a VA doctor noted an old injury to the left testicle with acute problems with recurrent pain and dysuria (difficult or painful discharge of urine). Then on November 4, 1988, the appellant filed to reopen his claim for service connection, this time only for the injury to the left scrotum. This request mentioned that he had been treated by a private physician, Dr. Frank P. Michener, for pain in the urinary tract. R. at 26. On March 16, 1989, the VA doctor assessed Ivey's condition as "epididymitis-old." Epididymitis is defined as inflammation of the elongated mass of convoluted efferent tubes at the back of the testis. WEBSTER'S MEDICAL DESK DICTIONARY 216 (1986). On April 7, 1989, the VA determined that the evidence submitted was not new and material and no reconsideration would be given to his claim. On April 27, 1989, he was again diagnosed as having chronic left epididymitis.

A new rating decision was issued on May 9, 1989, confirming that there was no new factual basis showing service connection for the left scrotum condition. On August 31, 1989, appellant appealed to the BVA. On March 22, 1990, the Board found that, "[t]he veteran's inservice [sic] injury was acute and transitory and resolved without identifiable residuals." *Dewey Ivey*, BVA 90–13236, at 4 (Mar. 22, 1990). Thus, service connection for residuals of an injury to the left scrotum was denied. Appellant appeals that BVA decision to this Court. The Court has jurisdiction of the case pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

■ The Court notes at the outset that the BVA erred when it considered appellant's claim to be reopened without an analysis as to whether the newly submitted evidence was new and material. The VA first denied service connection for residuals of an injury to the left scrotum in 1984. Appellant attempted to reopen this claim on November 4, 1988. On April 7, 1989, the VARO sent a letter to appellant stating that "the evidence [he] submitted to reopen [his] previously denied claim is not new and material. Because the evidence ... submitted does not provide a new basis for reconsideration of [his] claim, we can make no change in our previous decision." R. at 28. After the VARO received the appellant's VA outpatient treatment records for the period October 20, 1988, to April 27, 1989, the rating board addressed the "reopened claim," on May 9, 1989, yet determined that "no new factual basis [was] shown allowing [service connection] for left scrotum condition." R. at 37. The VARO never stated, however, whether the evidence submitted was new and material. Then, on June 22, 1989, when appellant requested reconsideration of his claim, the VA told him that if he had "additional medical evidence which is new and material to [his] case" to submit it. R. at 41. The BVA decision made a conclusory statement that the veteran reopened his claim in November 1988 and proceeded to evaluate the merits of appellant's claim, without first determining whether there was new and material evidence sufficient to reopen the claim.

■ When a veteran attempts to reopen a previously denied claim, "the BVA must perform a two-step analysis." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, the BVA must determine whether the evidence is 'new and material'. 38 U.S.C. [§ 5108 (formerly § 3008)]. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old.

*Id.* The claimant must present "new and material" evidence to reopen his claim under 38 U.S.C. § 5108 (formerly § 3008). In this case, however, the veteran was prevented from presenting new and material evidence to reopen his claim by the Secretary's failure to fulfill its statutory duty to assist the veteran in developing his prospective reopened claim for a service-connected scrotal injury. While the evidence submitted by veteran was inadequate to reopen his claim, it was sufficient to trigger the duty to assist.

The statutory requirement giving rise to the Secretary's duty to assist is established by 38 U.S.C. § 5107(a):

> Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The secretary shall assist such a claimant in developing the facts pertinent to the claim.

■ Once a claimant has submitted a well-grounded claim, the Secretary is required to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007(a)); 38 C.F.R. § 3.103(a) (1991); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405 (1991); *Murphy v. Derwinski*, 1 Vet.App. 78, 80–81 (1990). The veteran did present "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." *Murphy*, 1 Vet.App. at 81. Once the veteran has presented such a claim, the burden is shifted to the Secretary to assist the veteran in developing *"all* relevant facts, not just those for or against the claim." *Murphy*, 1 Vet.App. at 82.

While Ivey did not specifically request his private medical records and sign the VA release form as the veteran did in *White v. Derwinski*, 1 Vet.App. 519 (1991), he put the VA on notice of their existence. In

appellant's request to reopen his claim in 1988, he mentioned treatment for pain in the urinary tract by Dr. Frank R. Michener and provided the doctor's address. R. at 26. On January 19, 1989, the examining VA doctor suggested a review of the old records from the private urologist. R. at 34. When appellant returned for another VA medical examination on March 16, 1989, it does not appear that the private medical records were ever reviewed. When appellant filed his first claim in 1984, there is reference to hospitalization on August 6, 1983. R. at 16. The statement in support of his claim at that time referred to treatment by a urologist, Dr. D.W. Buntley, for 11 months. R. at 19. While the rating board denied appellant's claim in 1984 without any of these medical records or even a medical exam, that rating decision is not subject to our review. The evidence included in the record on appeal, presumably before the BVA in 1990, contains notice of private medical records in existence at least since 1984. The rating board denied appellant's claim for service connection without even obtaining or reviewing the appellant's private medical records, and the BVA affirmed the denial. The veteran also referred to a VA doctor, Dr. Peterman, who allegedly told appellant that he should be service connected for the scrotal injury, but nothing was done to ascertain the validity of this assertion. R. at 54–55.

The evidence of record and before the VA raised enough notice of pertinent private medical records to trigger the duty to assist the veteran in developing his claim for compensation for a service-connected scrotal injury. *See Murincsak v. Derwinski,* 2 Vet.App. 363 (1992). The VA should have sought to obtain the referenced private medical records and also to obtain an opinion from Dr. Peterman as to the possibility of service connection of the veteran's current testicular disorder.

After fulfilling its duty to assist the veteran, the BVA must make an initial determination as to whether or not the private medical records are new and material evidence so as to justify reopening appellant's claim under the two-step analysis of *Manio*

and 38 U.S.C. § 5108. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old. *Manio,* 1 Vet.App. at 145. Epididymitis is not a chronic disease subject to presumptive service connection under 38 U.S.C. §§ 1101(3), 1112; 38 C.F.R. § 3.309 (1991). In establishing service connection, a showing of continuity of symptomatology after discharge is required to support the claim when the fact of chronicity in service is not adequately supported. 38 C.F.R. § 3.303(b) (1991). In evaluating whether these medical records are new and material evidence sufficient to justify reopening appellant's claim "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991).

## III. CONCLUSION

Even though the BVA did not specifically decide that the evidence submitted by appellant was new and material, it proceeded to rule that the evidence submitted did not show any reasonable relationship between the first clinical documentation of left epididymitis, nearly 30 years after service, and the service injury to the left scrotum. Because the veteran presented a well-grounded claim, and the BVA proceeded to evaluate appellant's claim without first acquiring the veteran's private medical records, the veteran was prejudiced by the BVA's violation of its duty to assist the veteran. Therefore, the Secretary's motion for summary affirmance is DENIED, and the decision of the Board is VACATED and REMANDED for action consistent with this opinion, the concurring opinion notwithstanding.

*It is so ordered.*

STEINBERG, Associate Judge, concurring:

I concur in the Court's order vacating the March 22, 1990, decision of the Board of

Veterans' Appeals (BVA or Board) and remanding the case for the Department of Veterans Affairs (VA) to fulfill its duty to assist the veteran.

The facts of this case present squarely the question whether—and if so, under what circumstances—VA has a duty to assist a veteran who submits a motion to reopen a claim even though the veteran does not support his motion with the new and material evidence required by law before a claim, once disallowed in a final VA decision, may be reopened. The majority opinion finesses that issue somewhat by not deciding that the veteran here failed to present "material" evidence. In my opinion, as a matter of law, he has not done so; hence, the duty to assist here could be triggered only if a claimant seeking reopening is not required to submit new and material evidence in order to receive the benefit of VA's duty to assist a claimant. Because the veteran's evidentiary submissions since the prior denial of his claim in 1984 establish a well-grounded claim to reopen his previously disallowed claim—by his specific references to evidence which could plausibly be new and material and which the exercise of the duty to assist could plausibly be expected to produce—VA and the BVA had a duty, under 38 U.S.C. § 5107(a) (formerly § 3007(a)), to assist the veteran in developing the facts pertinent to that claim for reopening.

This Court, in *White v. Derwinski*, held that VA had a duty to assist a veteran, whose military medical records had been destroyed, to obtain "certain private medical records ... [h]e alleged ... would provide him with the necessary evidence to support his claim." 1 Vet.App. 519, 520 (1991). In *White*, The veteran's claim for service-connected disability compensation for injury and disease that he asserted were sustained in service had been denied previously by the BVA. The veteran submitted no new evidence, just a request that VA obtain private medical records. The Court stressed that "[t]he issue presented to us on appeal ... [is] a very narrow one" and that the Court's holding was that "in the context of this case, there was a 'duty to assist' [to try to locate the records] and

that such records that can be found should then be considered to determine whether there is 'new and material' evidence sufficient to justify reopening the appellant's claim." *Ibid.*

I write separately to emphasize that *White* and the instant case very clearly establish that a VA claimant seeking to reopen a claim previously and finally disallowed but who does not submit new and material evidence is entitled, upon submission of a plausible claim to reopen that includes specific references to evidence which would plausibly be new and material and which the exercise of the duty to assist could plausibly be expected produce, to the benefit of VA's duty to assist in the development of evidence that could constitute new and material evidence sufficient to justify reopening of the disallowed claim. This is not a "narrow" entitlement and should be clearly understood, the opinion of the majority notwithstanding.

I also wish to set forth in detail the analysis that I believe fully supports the results reached in *White* and the instant case so as to help solidify in the law a VA claimant's right to receive VA's assistance in developing the evidence necessary to reopen a previously and finally disallowed claim.

## I.  FACTS

In support of his claim to reopen his previously denied claim for service connection of a current testicular condition, the veteran submitted new evidence consisting of VA medical records reflecting VA treatment for a condition of the left testicle in 1988 and 1989. On a report of an October 1988 VA examination, a physician wrote "white male [with history] of injury to L testicle in svc—1957—was hospitalized then & since has had some recurrent pain and swelling in L testicle." R. at 32. Under the section of the report titled "diagnosis", the examiner wrote "old injury—L testicle—[without] acute problems—[history] of recurrent pain". He further noted "testes ... L—moderate tenderness—no swelling, redness". Under "plan" the ex-

aminer wrote *"will see* his service officer & apply for s.c. disability." R. at 33 (underscored in original). The examiner also noted that the veteran has been treated by a private urologist.

The report of a January 19, 1989, VA treatment contains the notation: "51 [year old white male with] old injury to L testicle [complains of] intermittent L testicular pain[.] Recent exam of GU [within normal limits] except for tender L epididymis". R. at 34. The plan at that time was indicated as "get old records from private urologist ... Evaluate as rating ... exam consult on next visit". R. at 34. The report of a March 16, 1989, VA examination contains an assessment of "L Epididymitis—old". R. at 35. And an April 27, 1989, progress note contains an assessment of "quiescent chronic L epididymitis". R. at 36.

## II. ANALYSIS

### A. *New and Material Evidence to Reopen*

The treatment reports are certainly "new" evidence, since they are not "merely cumulative of other evidence on the record". *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). The only evidence adduced in relation to the veteran's previous claim in 1984 consisted of his service medical records from 1956 to 1958 and his statement in support of his claim. There was no medical evidence in 1984 showing a testicular condition at any time since service. Thus, the treatment records from 1988 and 1989, which reflect a current chronic condition of the left testicle, are new evidence.

Although these records contain a reference to the in-service injury to the left testicle and references to "old" or "chronic" to describe the veteran's current epididymitis, all made in the context of evaluation for treatment of a current testicular condition, they do not contain a medical opinion that the current condition is causally related to the in-service injury. Since the records relate to current treatment rather than examinations for purposes of determining eligibility for service-connected benefits, it is reasonable to conclude that the examiners' references to the in-

service injury and recurring pain are based on the statements of the veteran rather than independent medical determinations verifying those assertions. The examiners' notations suggesting that they will "evaluate as rating", and that the veteran *"will ... apply for s.c. disability"* suggest an opinion by the examiners that there might be a basis for a claim of service connection, in that the veteran's assertions that the current condition is a result of the in-service injury are plausible. The examiners' reports, however, do not indicate that the examiners conducted an evaluation to determine the likely cause of the current condition. Because the evidence consists only of current treatment records and because the references to the in-service injury and the history of recurrent pain are not stated as medical opinions, I cannot find that there is a reasonable possibility that this evidence would change the outcome of the prior BVA decision disallowing the veteran's claim. *See Colvin v. Derwinski*, 1 Vet.App. at 174. Under these circumstances, as a matter of law, the evidence is not "material" for purposes of requiring the claim to be reopened under section 5108.

### B. *Well–Grounded Claim to Produce Duty to Assist in Reopening Claims*

#### 1. Summary

A conclusion that the claim was not required to be reopened under section 5108, however, does not compel the conclusion that VA and the BVA had no further obligations with respect to the veteran's **claim to reopen.** Further inquiry is required. The following analysis demonstrates that a duty to assist the claimant attaches under 38 U.S.C. § 5107(a) once the claimant has submitted a well-grounded claim to reopen—either by submitting new evidence that the claim is plausible or by making specific reference to evidence which could plausibly be new and material and which the exercise of the duty to assist could plausibly be expected to produce. This Court has not previously addressed expressly the question as to how, if at all, the

statutory standard for a well-grounded claim, giving rise to a duty to assist under subsection 5107(a), differs from the standard for new and material evidence, requiring that a claim be reopened under section 5108. The statutory and regulatory scheme, as well as this Court's precedents, establish a lower threshold for satisfying the requirement of a well-grounded claim in subsection 5107(a). Under applicable law and regulation, once a claimant has submitted a well-grounded claim to reopen a previously denied claim—either by submitting new evidence that the claim is plausible or by making specific reference to evidence which could plausibly be new and material and which the exercise of the duty to assist could plausibly be expected to produce—then VA has a duty under subsection 5107(a) to assist the claimant in obtaining such evidence.

### 2. Well–Grounded Claim vs. New and Material Evidence

The threshold requirement giving rise to the duty to assist is stated in 38 U.S.C. § 5107(a):

> Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim.

The Court has further defined this statutory standard, stating: "A well grounded claim is a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990).

The threshold for reopening a disallowed claim derives primarily from two provisions. The basic rule of finality of BVA decisions in 38 U.S.C. § 7104(b) (formerly § 4004(b)) states:

> Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered.

The referenced exception in 38 U.S.C. § 5108 states:

> If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

Therefore, when new and material evidence is presented or secured with respect to a previously disallowed claim, the claim must be reopened and re-reviewed pursuant to section 5108. Under subsection 7104(b), a claim may not be reopened and allowed unless new and material evidence is presented or secured with respect to that claim.

The Court has defined the statutory terms "new" and "material". Evidence is "new" if it is not "merely cumulative of other evidence on the record." *Colvin v. Derwinski*, 1 Vet.App. at 174. For evidence to be "material", "there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin*, 1 Vet.App. at 174.

Viewing these statutory standards in isolation, it seems clear that the requirement of a well-grounded claim establishes a lower evidentiary threshold than the requirement of new and material evidence. Evidence is sufficient to invoke the duty to assist if it is sufficient to justify a reasonable belief that the claim is capable of substantiation. The evidence submitted by the claimant need not itself be sufficient to establish entitlement to benefits. It need only be enough to justify a reasonable belief that further evidentiary development pursuant to VA's duty to assist would be reasonably likely to produce new and material evidence that would be reasonably likely to result in the establishment of entitlement to benefits. By contrast, to be "material", new evidence must do more than simply render "plausible" or "capable of substantiation" the evidentiary theory that could support the possibility that the for-

mer decision be altered. Rather, it must be sufficient, without further evidentiary development, to create a reasonable possibility of changing the outcome. This does not mean that the new evidence must in itself be sufficient to establish entitlement to benefits, since the new and material evidence must be evaluated in light of all the evidence, both new and old. *See Jones v. Derwinski,* 1 Vet.App. 210, 214–215 (1991); *Colvin* 1 Vet.App. at 174; *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). In a case such as this, however, where there was very little evidence of a service-connected condition in the prior disallowance of the claim, the new and material evidence obviously must be very substantial in order to create a reasonable possibility of changing the outcome.

3. VA's Chronological Obligations in Claims to Reopen Previously Denied Claims: Duty to Assist v. Authority to Reopen and Allow

*a. The statute:* As noted above, sections 5107(a) and section 5108 establish different evidentiary standards for different purposes. Subsection 5107(a) provides guidance for determining when VA's duty arises to assist the claimant in developing the facts pertinent to the claim. Section 5108 establishes the standard for determining when VA is required to reopen a claim and re-review the former disposition of that claim. Section 5108 in no way purports to supplant the standard in the immediately preceding section 5107 for purposes of determining when a duty to assist arises in claims to reopen previously denied claims. Moreover, section 5108 itself merely mandates reopening and re-review where new and material evidence is presented or secured. It does not, however, *prohibit* reopening or factual development in other

instances. This analysis derives directly from the words of the law.

Such prohibitions exist, if they exist anywhere, in 38 U.S.C. § 7104(b), which does provide some restrictions on VA's actions in relation to claims to reopen previously denied claims. That provision prescribes that unless new and material evidence is presented or secured with respect to a previously disallowed claim, that claim may not be "reopened *and* allowed". Because of the use of the conjunctive "and", section 7104(b) prohibits only the *allowance* of a claim for benefits in the absence of new and material evidence, but not the reopening of or development of facts pertinent to the claim. The use of "and" in section 7104(b) contrasts with the use of the disjunctive "or" in the comparable language in section 7105(c), which governs the finality of a regional office decision not appealed to the BVA within the requisite time: "If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened *or* allowed, except as may otherwise be provided by regulations not inconsistent with this title." 38 U.S.C. § 7105(c) (formerly § 4005(c)) (emphasis added). Furthermore, the final clause of subsection 7104(b) states that "a claim based upon the same factual basis may not be considered." When the claimant has submitted additional evidence sufficient to establish a well-grounded claim to reopen a previously denied claim, then the claim is not being "considered" on "the same factual basis", even though the new evidence might not be "material" within the meaning of section 5108.[1]

Although other readings of section 7104(b) might be posited, they do not withstand analysis. For example, it might be

1. There is some ambiguity as to whether the final clause of subsection 7104(b) is modified by the introductory clause "[e]xcept as provided in section 5108". However, to read this provision as stating that "except as provided in section 5108, ... a claim based upon the same factual basis may not be considered" would not change the meaning of the final clause of subsection 7104(b). When new and material evidence is presented or secured as provided in section

5108, then re-review of the claim is no longer upon "the same factual basis". Resolution of this ambiguity is not necessary for purposes of the present case, for, as indicated above, the veteran here has presented new evidence which, although not "material" within the meaning of section 5108 for purposes of requiring reopening and re-review, does present a new factual basis for *considering* the claim.

argued that the clause "except as provided in section 5108" is intended to imply that, for purposes of the statute, a claim is considered to be "based upon the same factual basis" unless new and material evidence is presented or secured as provided in section 5108. Thus, it would follow that a previously denied claim could not be *considered* again unless new and material evidence is presented or secured. Such a reading of the subsection would be flawed in two important respects. First, it would contradict the plain language of the phrase "based upon the same factual basis". Where there is some new evidence, further consideration is obviously on a different factual basis. If Congress intended that a claim could be *considered* only if new and material evidence were presented, there would have been no reason to have included the phrase "based upon the same factual basis" in section 7104(b). Therefore, the fact that the phrase was included suggests that it be interpreted in accordance with its ordinary meaning.

Second, to read the final clause of section 7104(b) as prohibiting *consideration* of a previously denied claim unless the additional evidence presented or secured rises to the level of being new and material would render nugatory a substantial portion of that subsection. If Congress had intended such a result, it could simply have stated: "Except as provided in section 5108 of this title, when a claim is disallowed by the Board the claim may not thereafter be reopened". Instead, Congress chose to state different restrictions: first, that a claim may not be "reopened *and allowed*" unless new and material evidence is presented or secured, and, second, that a previously denied claim may not be "considered" if it is "based upon the same factual basis". 38 U.S.C. § 7104(b) (emphasis added). By thus distinguishing the actions of "reopening and allowing" a claim and "considering" a claim, and using different terms for identifying the criteria for each action, the statute created different evidentiary requirements for various stages of VA action upon previously denied claims.

This two-tiered scheme in section 7104(b) for VA action on previously denied claims in section 7104(b) comports fully with the overall statutory and regulatory scheme. Section 5108 requires that the Secretary reopen and re-review a former disposition when a claimant presents new and material evidence. That section thus sets a standard for when reopening and re-review is compulsory. It does not, however, purport to define when there is a new factual basis which would justify consideration and further evidentiary development to seek to secure further new evidence which is material. Therefore, it does not bar *consideration* of a claim, or VA assistance in developing the facts pertinent to the claim under section 5107(a) when new evidence, although not itself material, is sufficient to present a well-grounded claim that material evidence may exist to warrant reopening the claim.

Concomitantly, section 7104(b) establishes that a claim may not be reopened *and* allowed unless there is new and material evidence. However, the final clause of that subsection sets a lower threshold for when a previously denied claim may be considered again. That clause, which would allow a claim to be "considered" but not "allowed" when there is some new evidence to change the factual basis of the former claim, thus accommodates VA's duty to assist a claimant under section 5107(a). Where new evidence submitted by the claimant is sufficient to justify a reasonable belief that a claim to reopen a previously denied claim is well grounded (including specific references to evidence that could plausibly be new and material and which the exercise of the duty to assist could plausibly be expected to produce), that evidence not only raises the duty to assist but it also changes the factual basis of the prior claim, so that consideration of the claim is not prohibited by section 7104(b). Thus, even though the evidence is not itself "material" for purposes of requiring reopening and re-review under section 5108, or allowing the claim under section 7104(b), when the claim is "well grounded" as to the reasonable possibility that new and material evidence exists VA's duty to assist requires it to help the claimant in

developing facts that may constitute new and material evidence.

This Court has held that the statutory provisions governing claims before VA "establish and allocate chronological obligations." *Gilbert v. Derwinski*, 1 Vet. App. 49, 55 (1990). A veteran bears the initial obligation of submitting a well-grounded claim. The burden then shifts to VA to assist the claimant in developing the facts pertinent to the claim. When all the evidence is assembled, the Secretary, or his designee, is then responsible for determining whether the evidence preponderates against the claim. *Ibid.* Nothing in the statute suggests that this scheme of chronological obligations is less applicable to a claim to reopen a previously denied claim than it is to an original claim. Nor does the statute suggest that the requirement of new and material evidence in section 5108 is intended to supplant the requirement of a well-grounded claim as the threshold evidentiary requirement for invoking VA's statutory duty to assist with respect to previously denied claims. Rather, as demonstrated above, the statute supports the application of the section 5107(a) threshold requirement (a well-grounded claim) to claims to reopen as well.

Read together, then, section 5107(a) and the final clause of section 7104(b) establish the initial evidentiary burden for the claimant on claims to reopen. The claimant is required to submit evidence (or specifically make reference to evidence not within the claimant's control) which is both sufficient to change the factual basis upon which the previous claim was denied and sufficient to justify a reasonable belief that the claim that new and material evidence may be presented or secured is well grounded—that such claim is plausible, capable of substantiation. The burden then shifts to VA to assist the claimant in developing the facts pertinent to the claim. If the evidence is itself material as well as new, VA will be required under section 5108 to reopen the claim and re-review the former disposition, as well as provide assistance under subsection 5107(a) in further developing the facts pertinent to the underlying claim. However, if the evidence is sufficient to change the factual basis but is not "material" (it obviously is "new" if it has changed the factual basis), VA's duty to assist will require it to help the claimant develop evidence which may be material. Once all the evidence is assembled, VA is then responsible for determining whether the new evidence is material within the meaning of section 5108—that is, whether the new evidence when viewed in the context of the old creates a reasonable possibility that the claim could be allowed.

*b. VA regulations:* The regulations prescribed by the Secretary to implement the statutory provisions relating to the duty to assist and consideration of previously denied claims buttress this reading of the statutory scheme. The regulation implementing the statutory duty to assist under section 5107(a) states:

> Proceedings before VA are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. The provisions of this section apply to *all claims for benefits and relief,* and decisions thereon, *within the purview of this part 3.*

38 C.F.R. § 3.103(a) (1991) (emphasis added). A claim to reopen a previously denied claim is clearly a "claim for benefits [or] relief ... within the purview of ... part 3 [of title 38, Code of Federal Regulations]." The regulation in 38 C.F.R. § 3.160 (1991) defines "[r]eopened claim" to include "[a]ny *application* for a benefit received after final disallowance of an earlier claim". (Emphasis added.) Since, for purposes of part 3 of the VA regulations, a reopened claim, as defined in regulation section 3.160, includes *any* benefit claim received after a final disallowance, then claims to reopen, even absent new and material evidence, are claims for benefits or relief within the purview of part 3. Indeed, elsewhere in part 3, the regulations specifically recognize "claims to reopen". *See* 38 C.F.R. § 3.157 (1991) (a report of examination or hospitalization may be treated as a

"claim to reopen"). Thus, because claims to reopen previously denied claim are "claims for benefits [or] relief ... within the purview of" part 3 of the VA regulations, the duty to assist claimants in developing the facts pertinent to their claims is fully applicable to claims to reopen under the provisions of 38 C.F.R. § 3.103(a). The duty to assist in claims to reopen, as with all other claims, is subject to the qualification that the claim be well grounded. However, there is no requirement in the statutes or regulations, that the requirement of new and material evidence is an additional prerequisite to the triggering of the duty to assist in claims to reopen previously denied claims.

## III. CONCLUSION

In conclusion, there is nothing in the statutory or regulatory schemes to suggest that in claims to reopen previously denied claims the statutory duty to assist the claimant is conditioned upon the requirement in section 5108 and section 7104(b) that there must be new and material evidence such that the claim could be allowed. Rather, the requirement of new and material evidence, as incorporated in section 7104(b), is a prerequisite to *allowing* a previously denied claim, but does not absolve the Secretary of his obligation to assist a claimant who submits a well-grounded claim to reopen—by his specific references to evidence which could plausibly be new and material and which the exercise of the duty to assist could plausibly be expected to produce.