Betty N. WATSON, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–961.

United States Court of Veterans Appeals.

Feb. 11, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

On January 19, 1993, the Acting Secretary of Veterans Affairs (Acting Secretary) moved the Court to grant reconsideration, or in the alternative, to grant review by a panel, in order to vacate or modify a January 5, 1993, single-judge memorandum decision in this case. In that prior decision, the Court had remanded an April 8, 1991, Board of Veterans' Appeals (Board or BVA) decision denying entitlement to service connection for the veteran's death. *Betty N. Watson*, BVA 91–12167 (Apr. 8, 1991). The Court had vacated the BVA decision and remanded the record on the grounds that, inter alia, the Board had failed to provide adequate reasons or bases for its findings and conclusions, and for the failure to carry out the Secretary's duty to assist. On February 5, 1992, the appellant filed an opposition to the Acting Secretary's motion. The Court grants the Acting Secretary's motion for reconsideration and withdraws its decision of January 5,

1993, and replaces it with this decision; the Secretary's motion for review by a panel is therefore moot. The new decision does not reach a fundamentally different result from the January 5 decision.

■ The pro se appellant, Betty N. Watson, the widow of veteran Hezekiah Watson, appeals an April 8, 1991, BVA decision denying entitlement to service connection for the veteran's death. *Watson*, BVA 91–12167. The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. Summary disposition is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990). The Court will deny the Secretary's motion for summary affirmance, vacate the BVA's April 8, 1991, decision, and remand the matter to the Board for prompt readjudication consistent with this decision.

## I. BACKGROUND

The veteran served in the United States Air Force from June 1964 to June 1967 and from September 1967 to September 1984. R. at 229, 299. Service medical records dated between 1975 and 1983 describe the veteran as an alcohol abuser, R. at 23, 36, 44–45, 105, 109, 210, 226, 271, and discuss his treatment for alcohol abuse, R. at 25, 46–48, 50, 94–95, 110, 113–15, 119, 121, 197, 211–13. On numerous occasions between 1975 and 1984, the veteran also was diagnosed with leukopenia (condition involving abnormally fewer white blood cells, STEDMAN'S MEDICAL DICTIONARY 862 (25th ed. 1990) [hereinafter STEDMAN'S]). R. at 9, 10, 12, 16, 19, 25, 26, 36, 38–39, 41, 74, 123, 133, 143, 210, 253.

On October 12, 1984, the veteran filed a claim with a Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) for service connection for leukopenia, a left-hand injury, arthritis, hearing loss, ulcer, tuberculosis, head-

aches, eye injury, high blood pressure, sinusitis, and foot problems. R. at 252. On April 26, 1985, the RO granted service connection for leukopenia (rated as zero percent disabling), a left-hand injury (rated as zero percent disabling), and "tinea versicolor history tinea corporis–tinea pedis" (history of well-defined, scaling, macular eruption of brown or tan scaly patches on skin of trunk, often appearing white; and athlete's foot, STEDMAN's at 1603) (rated as zero percent disabling), for an overall disability rating of 10%. R. at 255. *See* 38 C.F.R. § 3.324 (1992) (VA may apply a 10% disability rating where two or more separate, permanent, service-connected disabilities that are not individually of a compensable degree clearly interfere with normal employability). This rating decision indicated that "the veteran's persistent leukopenia ... is related to a [physiological] production problem" in the veteran's bone marrow even though leukopenia had not been diagnosed on the examination administered for this rating decision (R. at 253–54) (the examination had stated that "the leukopenia is apparently not symptomatic", R. at 254). On October 17, 1985, the RO awarded service connection for arteriosclerotic disease with essential hypertension and sinus tachycardia. R. at 266. On July 22, 1986, the veteran filed a claim for service connection for alcohol abuse. R. at 268. The RO denied entitlement to service connection for alcohol dependence because the veteran's alcohol dependence was the result of willful misconduct. R. at 271. *See* 38 U.S.C.A. §§ 105(a), 1110 (West 1991), *amended by* Omnibus Budget Reconciliation Act of 1990, Pub.L.No. 101–508, § 8052(a), (b), 104 Stat. 1388, 1388–351 (1990) (effective with respect to claims filed **after** October 31, 1990) (OBRA); 38 C.F.R. §§ 3.301(a), (b), 3.301(c)(2).

The veteran died on November 8, 1989, as a result of "acute and chronic pancreatitis due to chronic ethanol abuse". R. at 273, 274, 281. On December 11, 1989, his widow filed a claim for dependency and indemnity compensation (DIC) for service connection for her late husband's death and for accrued benefits. R. at 285. The RO denied service connection for the veteran's death on January 5, 1990. R. at 296.

In an April 9, 1990, Form 1–9 (Appeal to BVA), the appellant stated that her husband's death should have been considered service connected because his in-service alcohol abuse contributed to the immediate cause of death, pancreatitis. R. at 301. The widow also stated that the veteran had developed leukopenia while in service, and she indicated that the service-connected leukopenia, along with other conditions that had not yet been found to be service connected, had caused her husband's death. *Ibid.* On April 13, 1990, the veteran's sister, a physician, sent a letter to the BVA noting that the veteran had entered service as a healthy young man but had developed numerous conditions while in service, including leukopenia, from exposure to toxic chemicals and fumes in the engine shop where he worked. R. at 317. In its April 1991 decision, the BVA denied service connection for the veteran's death, but remanded the matter to the RO on the issue of accrued benefits for service connection for post-traumatic stress disorder, ulcers, hypertension, and tuberculosis. *Watson*, BVA 91–12167, at 2.

## II. ANALYSIS

The surviving spouse of a veteran who has died after December 31, 1956, may file a claim for DIC. 38 U.S.C.A. §§ 1310, 1311 (West 1991). A claim for DIC will be construed also as a claim for death pension and accrued benefits. *See* 38 U.S.C.A. § 5101(b)(1) (West 1991); 38 C.F.R. § 3.152(b) (1992); *Isenhart v. Derwinski*, 3 Vet.App. 177, 179 (1992). The veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1992). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1992). A contributory cause of death must be causally connected to the death and must have "contributed substantially or materially" to death, "com-

bined to cause death", or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c)(1) (1992). Therefore, the issue is whether a service-connected disability was a principal or contributory cause of the veteran's death.

■ The Board must provide "adequate reasons or bases" for its findings, "must identify those findings it deems crucial to its decision[,] and must account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990); *see* 38 U.S.C.A. § 7104(d)(1) (West 1991). In the instant case, the Court cannot at this time determine whether the Board's findings were "clearly erroneous", *Gilbert*, 1 Vet.App. at 53, because the BVA failed to provide adequate reasons or bases for its conclusion that the veteran's death was not service connected.

### A. *Service–Connected Death*

■ **i. Pancreatitis:** The Board did not provide adequate reasons or bases for its conclusion that pancreatitis, the immediate cause of the veteran's death, was not a service-connected disability. In her brief, the appellant indicates that her late husband's pancreatitis was the result of chronic alcohol abuse in service. Br. at 1. Although no compensation is payable as to claims filed before November 1, 1990, for disabilities resulting from a veteran's own willful misconduct, 38 U.S.C.A. § 1110, organic diseases which are, as pancreatitis may be, "a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin." 38 C.F.R. § 3.301(c)(2) (1992). (For claims filed after October 31, 1990, disabilities that are "a result of the veteran's own willful misconduct *or abuse of alcohol or drugs*" are not compensable. 38 U.S.C.A. § 1110, *as amended by* OBRA, § 8052 (emphasis added).) In the instant case, therefore, since the veteran's widow filed her DIC claim on December 11, 1989, the veteran's pancreatitis could qualify for direct service connection, under 38 C.F.R. §§ 3.303(a), 3.304(a) (1992), if the pancreati-

tis were incurred in or aggravated during service as a result of alcohol abuse and if it were not the result of his own willful misconduct.

The Board failed to discuss the contention that in-service alcohol abuse caused the veteran to develop pancreatitis. The autopsy found that the veteran's pancreatitis, which caused his death, was due to chronic ethanol abuse. R. at 273. In addition, the veteran's widow testified that he began drinking alcohol heavily while in service because of pressure and stress. R. at 324–26. However, the Board did not discuss whether documented in-service alcohol abuse, albeit not service-connected itself, caused the veteran's pancreatitis that led to his death. *See* 38 C.F.R. § 3.303(d) (1992) (service connection may be granted for disease diagnosed after discharge, when the evidence, including that pertinent to service, establishes that the disease was incurred in service).

■ Additionally, the Board failed to assist the claimant, pursuant to VA's duty to assist in seeking to obtain evidence relevant to the claim for direct service connection for pancreatitis. *See* 38 U.S.C.A. § 5107(a) (West 1991). The Board noted that an impression of pancreatitis had first appeared in the veteran's medical records in a January 5, 1987, letter from a VA clinical social worker, R. at 306. *Watson*, BVA 91–12167, at 7. However, the veteran's widow testified under oath at an August 21, 1990, hearing before the RO that a civilian physician in Washington State had examined the veteran for pancreatitis in 1981. R. at 328–29. The record on appeal (ROA) does not include records of a 1981 treatment by such a physician, and the Board did not address this evidence at all. The widow further testified that a Dr. Martinez at the Riviera Beach, Florida, VA outpatient clinic had treated her husband soon after his discharge from service in late 1984 for symptoms consistent with pancreatitis, such as nausea and stomach pain, and that Dr. Martinez had diagnosed the veteran as suffering from pancreatitis. R. at 330–31. The Board did not discuss the widow's statements of clinically diag-

nosed pancreatitis in late 1984 or treatment by a Dr. Martinez. The ROA does not include any 1984 records of treatment or diagnosis by a Dr. Martinez. VA's duty to assist includes seeking to obtain all relevant medical records of which it has notice. 38 U.S.C.A. § 5107(a); 38 C.F.R. § 3.159 (1992); *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *Murincsak v. Derwinski*, 2 Vet.App. 363, 373 (1992) (VA must obtain all pertinent medical records called to its attention by evidence of record); *Ivey v. Derwinski*, 2 Vet.App. 320, 322–23 (1992) (same). In view of the widow's references to 1981 treatment by a Washington physician and 1984 treatment by a Dr. Martinez, VA breached its duty to assist the widow in seeking to obtain all pertinent medical records.

 **ii. Leukopenia:** The Board also failed to provide adequate reasons or bases for the conclusion that leukopenia did not cause or contribute to the veteran's death. The Board stated that "no medical evidence has been submitted" that leukopenia was a principal or contributory cause of the veteran's death. *Watson*, BVA 91–12167, at 6. The Board failed to discuss its analysis of the credibility and probative value of a letter from the veteran's sister, a physician, in which she wrote that the veteran's death was related to his service-connected leukopenia and to explain the reasons or bases for its implicit rejection of that evidence. R. at 317. *See Gilbert*, 1 Vet.App. at 57; *see also Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992); *Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991); *Espiritu v. Derwinski*, 2 Vet.App. 492, 494–95 (1992) (physician's evidence on a matter involving medical knowledge, such as cause of veteran's death, is generally more probative than evidence offered by lay witness). "[W]hether the ultimate conclusions of the Board are correct or not, an incomplete analysis requires remand". *Fallo v. Derwinski*, 1 Vet.App. 175, 177 (1991) (citing *Sammarco v. Derwinski*, 1 Vet.App. 111, 113 (1991)). On remand, the Board must deal with the sister's letter accordingly and provide adequate reasons or bases for its conclusion. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991); *Murphy v. Der-winski*, 1 Vet.App. 78, 81 (1990); *Fallo*, 1 Vet.App. at 177.

## B. *Death Pension*

 The Court further notes that VA should have considered the widow's claim for DIC as a claim for death pension also. *See* 38 U.S.C.A. § 5101(b)(1); 38 C.F.R. § 3.152(b)(1); *Isenhart, supra*. At an August 21, 1990, hearing before the RO, the widow told a hearing officer that she did not have any money and that she "needed some help regardless of what [the veteran] died from." R. at 333. On remand, VA must inform the widow of what evidence is needed to complete an application for pension. *Ibid.;* 38 U.S.C.A. §§ 5103(a), 5107(a), 7722(d) (West 1991) (Secretary must provide eligible dependents, to the maximum extent possible, with "aid and assistance ... in the preparation and presentation of [VA] claims"); *Smith (Edward F.) v. Derwinski*, 2 Vet.App. 429, 431–33 (1992) (§ 7722(d) includes assistance "on an individual basis", where feasible); 38 C.F.R. § 3.109(a) (1992).

## III. CONCLUSION

 Upon consideration of the record and the pleadings of the parties, the Court denies the Secretary's motion for summary affirmance, vacates the April 8, 1991, BVA decision, and remands the matter to the BVA for prompt compliance with the duty to assist and for prompt readjudication, consistent with this decision. On remand, the appellant will be free to present additional evidence and argument regarding the cause of death. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). The Court expects the Board on remand to re-examine the evidence of record, seek appropriate additional evidence, and issue a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C.A. §§ 7104(a), 7104(d)(1) (West 1991). The Court notes that "a remand is meant to entail a critical examination of the justification for the decision" and is not "merely for the purpose of rewriting the opinion so that it will superficially comply with" the Court's order. *Fletcher v. Derwinski*, 1

Vet.App. 394, 397 (1991). A final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

VACATED AND REMANDED.