**Philip GREGORY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–54.**

United States Court of Veterans Appeals.

March 8, 1996.

Walter B. Patterson, Statesville, NC, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Rudrendu Sinhamahapatra, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, IVERS, and STEINBERG, Judges.

MANKIN, Judge:

The appellant, Philip Gregory, appeals the September 24, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for a heart disorder, hypertension, and hemorrhoids. The appellant, through counsel, seeks reversal of the BVA decision and a remand with appropriate instructions. The appellant contends that the Board erred in failing to apply 38 U.S.C. § 1154(b), in failing to search adequately medical records at its disposal regarding the appellant, and in denying benefits to the appellant for his disabilities. The Secretary contends that the BVA erred in finding the claims well grounded, that the error was harmless, and that the Court should summarily affirm the decision. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the BVA decision in part, vacate the decision in part, and remand a matter to the Board for readjudication consistent with this opinion.

## I. FACTUAL BACKGROUND

The appellant served in the United States Army from September 1943 to September 1946 and from December 1946 to May 1948. He was honorably discharged from both periods of service. Discharge documentation does not indicate the problems for which the appellant is seeking service connection. The appellant's service medical records (SMRs) were lost in the 1973 St. Louis fire at the National Personnel Records Center and could not be reconstructed.

In March 1991, the appellant submitted a request to the VA regional office (RO) for service connection for a heart disorder, hypertension, and hemorrhoids. In the request, he stated that his current hemorrhoid problem related to surgery during service, when he had part of his intestines removed. To support his claims, the appellant submitted a July 1972 physical findings report issued by Dr. Ernest V. Nau and a March 1991 medical examination report issued by Dr. James S. Foushee. Dr. Nau reported the appellant's blood pressure at 160/100 (systolic/diastolic) and diagnosed hypertension. Dr. Foushee reported the appellant's blood pressure at 210/106 and diagnosed hypertension as well. In a Statement in Support of Claim filed in June 1991, the appellant alleged he had been to several doctors for his hemorrhoid problem but could not substantiate this information because each of the doctors had died and his records had been destroyed. Army Surgeon General records located by the VA showed no evidence of the appellant having any surgery involving the removal of intestines during service.

In June 1991, the RO denied service connection for all three claims because the appellant had not submitted evidence to show that these problems were either incurred or aggravated during service or manifested within the one-year presumption period. The appellant filed his Notice of Disagreement the following month, and a Statement of the Case was issued.

In October 1991, the appellant filed a VA Form 1–9 (Substantive Appeal to the BVA) in which he alleged that the removal of one foot of his colon in 1945 had resulted in the hemorrhoids, that he was diagnosed with "[h]eart [f]atigue" in 1949, and that he had a heart attack in 1962. He submitted the report of an April 1991 medical examination conducted by Dr. Joseph A. Petrozza who, after performing a colonoscopy, diagnosed the appellant with "(1) [i]nternal hemorrhoids, probably the source of the recent intermittent hematochezia[,] (2) ... two tiny rectal polyps, probably hyperplastic[, and] (3)[s]cattered sigmoid diverticulosis, mild in degree." (Hematochezia is the passage of blood through the feces. DORLAND'S ILLUS-TRATED MEDICAL DICTIONARY 741 (28th ed.1994).) Dr. Petrozza noted that the appellant's heart was "without murmur or gallop" and his blood pressure was 134/80. The examination report indicated that the appellant had an abnormal thallium test. (A thallium test is a scanning of the heart. THE MERCK MANUAL 384 (16th ed.1992).) He subsequently underwent a cardiac catheter test which Dr. Petrozza opined "was normal with normal ventricular function and normal coronary arteries, essentially ruling out coronary artery disease." A biopsy of the rectal polyps showed them to be benign. In April 1992, at the appellant's request, the Board held a hearing at the RO. The appellant submitted affidavits intended to establish that his heart disorder was service connected. One affidavit was written by his sister who stated she received letters from her brother while he was in a hospital in Cherbourg, France, in 1945. She further stated that the appellant was treated for a colon leak and for heart fatigue after his discharge. The other two affidavits from his brother and his cousin both stated that the appellant was treated by Dr. Myers from 1948 to 1952. Neither affidavit indicates what the appellant was treated for by Dr. Myers.

The appellant and his brother presented sworn testimony as well at the April 1992 hearing. With respect to his heart disorder and hypertension claims, the appellant stated he went to see Dr. Myers right after he was discharged and was diagnosed with heart fatigue. He described himself as tired throughout the day, and when he would come home at the end of the day, his "heart would quit, stop for a moment there...." The appellant stopped seeing Dr. Myers in 1952 when he moved out of state. The appellant testified he had a mild heart attack in 1962, when he first learned of his hypertension, for which he was not hospitalized. Instead, he was under the care of Dr. Deloy and Dr. Wright in a clinical setting for the heart attack. The appellant stated he did not know whether he had been treated for a heart condition or hypertension during service.

With respect to his hemorrhoids claim, the appellant testified that he believed his initial

problems with his colon and rectum began when he was in Belgium in 1945, where for three days and nights he did without an overcoat and sleeping bag. During the third day, he stated, he was bleeding internally and passing blood; he was sent to Paris, France, where he was examined and diagnosed with fissures in his intestines. The appellant testified that he was then sent to a hospital in Cherbourg, France, where doctors "jerked out whatever they needed to" during an operation. He stated that he remained in Cherbourg for ten days and was transferred to Paris, France, where he remained for two weeks.

The appellant claimed that when he was sent back to his outfit, he was put on light duty because he had continual problems with bleeding from his rectum. He stated that he had ongoing bleeding problems from 1945, the time of the operation, until his discharge in 1948. He alleged he was discharged because of the bleeding problem.

Within the first two years after his discharge, the appellant asserted, he stayed at a clinic where Dr. Myers took care of him for weeks at a time. He said that after he arrived in Virginia, he went to Dr. Deloy and then to Dr. Oliver for treatment for the hemorrhoids and bleeding problem in the late 1970's and into the 1980's. The appellant claimed he had submitted paperwork to the VA showing his treatment with Dr. Oliver. No such paperwork is in the file. The appellant further asserted that he had had bleeding and loose bowel problems continuously since 1945 when he was operated on in service and that he currently has the same problem.

On September 24, 1993, the BVA, in the decision here on appeal, found the claims well grounded and denied the benefits sought, stating that the three disabilities were not shown to have been present during service and were not "clinically manifested until many years after service." A timely appeal to this Court followed.

## II. ANALYSIS

■ The appellant argues in his brief that section 1154(b) of title 38 of the United States Code allows a combat veteran to establish service connection with lay testimony. It is undisputed that the appellant is a combat veteran and that the Board did not apply section 1154(b) to his claims. Section 1154(b) states:

> In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). In *Caluza v. Brown*, 7 Vet.App. 498 (1995), the Court analyzed section 1154(b) in detail and determined that this provision could be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was *incurred* or *aggravated in* service, not to link the service problem etiologically to the current problem. *Id.* at 507. The provision does not establish service connection for a combat veteran; it aids the combat veteran by relaxing the adjudicative evidentiary requirements for determining what happened in service. *See Caluza*, 7 Vet.App. at 508. The veteran must then generally establish that his claim is well grounded by medical evidence tending to show a current disability and a nexus between that disability and those service events. *See Caluza*, 7 Vet.App. at 507.

### A. Well-groundedness

■ A claimant has the burden of "submitting evidence sufficient to justify a belief by a fair and impartial individual that the

claim is well grounded." 38 U.S.C. § 5107; *see Grottveit v. Brown,* 5 Vet.App. 91 (1993); *Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). The Court has defined a well-grounded claim as one which is plausible, "meritorious on its own or capable of substantiation." *Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990). Such a claim need not be conclusive but only possible to satisfy the initial burden of § [5107(a) ]. *Ibid.* Where the issue is factual in nature, e.g., whether an incident or injury occurred in service, competent lay testimony ... may constitute sufficient evidence to establish a well-grounded claim under section 5107(a).... However, where the determinative issue involves medical causation or a medical diagnosis, competent medical evidence to the effect that the claim is "plausible" or "possible" is required. *Grottveit,* 5 Vet.App. at 93. A diagnosis and an analysis of the etiology of a heart disorder, hypertension, and hemorrhoids require competent medical evidence and cannot be evidenced by the appellant's lay testimony. *See Grottveit,* 5 Vet.App. at 93; *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992) (layperson is usually not competent to testify as to matters involving medical knowledge). The truthfulness of evidence is generally presumed in determining whether a claim is well grounded. *See Robinette v. Brown,* 8 Vet. App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court. 38 U.S.C. § 7261(a)(1); *see Grottveit,* 5 Vet.App. at 92.

■ With respect to the heart disorder claim, there is no medical evidence that the appellant currently suffers from a heart disorder. The April 1991 medical examination showed no diagnosis of a heart disorder. Absent a medical diagnosis or clinical evidence of a current disability, the appellant's claim is not well grounded. *See Grottveit,* 5 Vet.App. at 93; *Rabideau v. Derwinski,* 2 Vet.App. 141, 143–44 (1992). Even assuming that chest pains and an abnormal thallium test result would be sufficient evidence of a current heart condition despite the negative results of the cardiac catheter test, there is still no competent (medical) evidence connecting this condition with his service. *See*

*Dean v. Brown,* 8 Vet.App. 449 (1995). His lay testimony that he has had a heart condition ever since discharge is not sufficient evidence of nexus to service. *See Caluza, supra.*

■ With respect to the hypertension claim, the appellant admitted in the April 1992 BVA hearing that he was first diagnosed with hypertension in 1962, 14 years after he was discharged. Even his lay testimony, if taken as true (*see Robinette* and *King,* both *supra* ), does not establish that he had hypertension in service or within the one-year presumption period following service, and, therefore, his claim is not well grounded. *See Grottveit,* 5 Vet.App. at 93.

■ The submission of a well-grounded claim is "a prerequisite to the triggering of the duty-to-assist obligation under [38 U.S.C. § 5107(a) ]." *Godwin v. Derwinski,* 1 Vet. App. 419, 425 (1991); *see also Suttmann v. Brown,* 5 Vet.App. 127, 137 (1993). Because the heart disorder and the hypertension claims are not well grounded, no duty to assist arose with respect to those claims. Although the Board erred in concluding that the appellant's claims for service connection for a heart disorder and hypertension were well grounded, such error did not result in prejudice to him. *See* 38 U.S.C. § 7261(b) (Court shall take due account of rule of prejudicial error). In *Edenfield v. Brown,* the Court determined that the appropriate remedy under these circumstances is "to affirm rather than vacate a BVA decision disallowing a claim on the merits where the Court finds the claim to be not well grounded." *Edenfield,* 8 Vet.App. 384 (1995) (en banc). Therefore, the Court will affirm the BVA decision with respect to the heart disorder and hypertension claims.

■ As to the hemorrhoids claim, under section 1154(b), the appellant may use lay testimony to show that rectal bleeding happened *in* service, but not to show a current diagnosis or a nexus between a current condition and service. *See Caluza,* 7 Vet.App. at 507. In this case the Board failed to apply section 1154(b) to the appellant's hemorrhoids claim. The appellant testified that he had intestine surgery and

rectal bleeding while in service and continually thereafter. Although there are no service medical records (SMR) to show an in-service rectal bleeding problem because the SMRs were lost or destroyed, the appellant's lay testimony, under section 1154(b), is satisfactory evidence of in-service rectal bleeding without the need for documentation corroborating such condition. *See Caluza, supra.* However, the lay testimony is not competent evidence to show service incurrence of a medical diagnosis of hemorrhoids as the cause of the bleeding. On the other hand, his sworn testimony that he has had rectal bleeding and loose bowel problems continuously since 1945, when he said he had surgery in service, is competent evidence regarding continuity of symptomatology because it relates to an observable condition. *See* 38 C.F.R. § 3.303(b) (1994); *Layno v. Brown,* 6 Vet.App. 465, 469–70 (1994) (lay testimony iterating knowledge and personal observations of witness are competent to prove that claimant exhibited certain symptoms at a particular point in time following service); *Harvey v. Brown,* 6 Vet.App. 390, 393 (1994) (claim well grounded where testimony of veteran's widow related to observable sequence of events that led to trauma); *see also Falzone v. Brown,* 8 Vet.App. 398 (1995). The credibility of this evidence must be presumed for purposes of determining whether the claim is well grounded. *See Robinette* and *King,* both *supra.* He further presented medical evidence that he currently has hemorrhoids and a rectal bleeding problem and that the hemorrhoids are "probably the cause of recent intermittent hematochezia." This medical evidence sufficiently shows a current diagnosis. *See Grottveit, supra.*

 As to medical evidence of a nexus between the veteran's hemorrhoids and his inservice rectal bleeding, continuity of symptomatology can provide a connection between his current rectal bleeding and his in-service rectal bleeding, but medical evidence is necessary to connect his currently diagnosed hemorrhoids to rectal bleeding in service. Because his SMRs were lost in the 1973 fire, the Court is inhibited in making a de novo determination on well groundedness in terms of what diagnoses and treatment may have

occurred in service as to the in-service rectal bleeding. Under these circumstances, along with the reduced adjudicative evidentiary requirements established by section 1154(b) for combat veterans and the evidence as to continuity of symptomatology, the Court finds present in the facts of this case a type of ambiguity similar to that which impelled the Court in *Grivois v. Brown,* assuming that the claim was well grounded when the medical evidence could be interpreted in different ways as to nexus to service, to remand for an adequate statement of reasons or bases and possible further development. *See Grivois,* 6 Vet.App. 136, 140 (1994); *Moore (Howard) v. Derwinski,* 1 Vet.App. 401, 405 (1991) (claim for service connection for diagnosed arthritis in heels held well grounded where combat veteran's medical records were destroyed in the 1973 fire, partially reconstructed SMRs showed diagnosis of trench foot, and his testimony asserted that he had problems with his feet at the time of separation examination and continuously thereafter over the subsequent 40 years); *cf. O'Hare v. Derwinski,* 1 Vet.App. 365, 367 (1991) (holding that "where the service medical records are presumed destroyed ..., the BVA's obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule [under 38 U.S.C. § 5107(b) ] is heightened"). Accordingly, the Court will proceed to review the merits of the BVA decision, as did the Court in *Grivois, supra.*

### B. Adequate Statement of Reasons or Bases

 The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1); *Simon v. Derwinski,* 2 Vet.App. 621, 622 (1992); *Masors v. Derwinski,* 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). The Court has defined section 7104(d)(1) to mean the following:

> [T]he Board must identify those findings it deems crucial to its decisions and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclu-

sory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements. *Gilbert,* 1 Vet.App. at 57. When SMRs have been destroyed, the Board has a heightened obligation to provide an explanation of reasons or bases for its findings and to consider the benefit-of-the-doubt rule under 38 U.S.C. § 5107(b). *See O'Hare v. Derwinski,* 1 Vet. App. 365, 367 (1991).

█ The BVA has not met the requirements of 38 U.S.C. § 7104(d)(1) described above. The appellant has contended on numerous occasions that he believes his current hemorrhoids and bleeding problem are a result of the surgery he had in service. In its September 1993 decision, the BVA failed to address whether the appellant's current bleeding problem was related to the hemorrhoids or related to the alleged surgery of which there is no documentary proof but as to which section 1154(b) must be addressed. Therefore, a remand is necessary with respect to this claim, because the Court has found that it is well grounded, and the Board is required to address the connection of the current condition to the appellant's service. *See Gilbert,* 1 Vet.App. at 57.

### C. Duty to Assist

Once a claimant has submitted a well-grounded claim, the Secretary is required to "assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (formerly § 3007(a)); 38 C.F.R. § 3.103(a) (1994); *see Ivey v. Derwinski,* 2 Vet.App. 320 (1992); *Godwin,* 1 Vet.App. at 425; *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy,* 1 Vet.App. at 80–81. Since the Court has determined that the appellant had submitted a well-grounded claim, "pursuant to section 5107(a), [the] VA then had the duty 'fully and sympathetically [to] develop the veteran's claim to its optimum before deciding it on the merits.'" *Magana,* 7 Vet.App. at 227 (quoting H.R.Rep. No. 100–963, 100th Cong., 2d Sess. 13, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795). The Court finds that the VA breached its duty to assist and therefore remands the hemorrhoids claim to the Board for development consistent with this opinion.

█ In some circumstances, the duty to assist may include requiring a thorough and contemporaneous medical examination to determine the extent of the claimant's disability. *See Allday v. Brown,* 7 Vet.App. 517, 526 (1995) (citing *Suttmann,* 5 Vet.App. at 138, and *Green (Victor) v. Derwinski,* 1 Vet.App. 121, 124 (1991)). Although the appellant has undergone a 1991 medical examination, that examination did not address whether the appellant's current problems are residuals of the alleged intestine surgery. A current examination for that purpose is necessary. Further, the appellant's assertion that he had one foot of his intestine removed in service should be taken into account. The Board may also want to order x-rays or other appropriate procedures to assist both the appellant in substantiating his claim and the Board in determining whether the appellant's hemorrhoids claim is a service-connected disability.

Three doctors whom the appellant testified he had seen after his discharge, Dr. Myers, Dr. Deloy, and Dr. Foushee, had died, and the appellant could not get medical records for any visits which he said would have established his medical problems soon after his discharge. The appellant acknowledged that Dr. Myers's wife was still alive and could corroborate his treatments at the clinic; however, he did not want to approach her for that information. The VA sent requests to all three doctors for any information they could provide on the appellant. No records from the doctors were received. The appellant, during the April 1992 hearing, testified that he had been treated by Dr. Oliver within the last 40 years for lower intestinal problems, bleeding, and hemorrhoids. As previously mentioned, he alleged that he had submitted to the VA evidence of his visits with Dr. Oliver, but they are not part of the record. Pursuant to its statutory duty to assist, the VA should have sought to obtain pertinent private medical records that the appellant testified existed and he was unable to procure. *See Allday,* 7 Vet.App. at 526; *Ivey,* 2 Vet.App. at 323.

The appellant has argued in his brief that "[t]he BVA erred in failing to search adequately the medical and personnel records at its disposal as pertaining to the [a]ppellant during his active military service." The Board did secure the Army Surgeon General records in its attempt to reconstruct the appellant's SMRs. The appellant is reminded that "[t]he duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." *Zarycki v. Brown,* 6 Vet. App. 91, 100 (1993) (quoting *Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991)).

## III. CONCLUSION

Accordingly, upon consideration of the record, the appellant's brief, and the Secretary's brief, the Court AFFIRMS the Board's September 24, 1993, decision insofar as the claims for a heart disorder and hypertension are concerned. The Court VACATES in part the Board's decision and REMANDS to the BVA for further development and readjudication in accordance with this opinion. The appellant is free to submit additional evidence and argument on remand. *See Quarles v. Derwinski,* 3 Vet.App. 129, 140–41 (1992).

AFFIRMED IN PART; VACATED AND REMANDED IN PART.