Citation Nr: 1132159 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 07-21 059 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to service connection for cold injury residuals to the bilateral upper extremities. 

2. Entitlement to service connection for a lumbar spine disability.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

A. R. Grasman, Counsel


INTRODUCTION

The Veteran served on active duty from January 1951 to December 1952. 

This appeal comes before the Board of Veterans' Appeals (Board) from a May 2006 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio. This appeal was remanded by the Board in May 2010 for additional development. 

In March 2010, the Veteran testified in a video conference hearing in front of the undersigned Veterans Law Judge. The transcript of the hearing is associated with the claims file and has been reviewed.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issue of entitlement to service connection for cold injury residuals to the bilateral upper extremities is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDING OF FACT

A lumbar spine disability is not shown to be causally or etiologically related to any disease, injury, or incident during service, and arthritis did not manifest within one year of the Veteran's discharge from active duty.


CONCLUSION OF LAW

A lumbar spine disability was not incurred in or aggravated by service; nor may it be presumed to be incurred therein. 38 U.S.C.A. §§ 1110, 1111, 1112, 1113 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Here, the Veteran was sent a VCAA letter in October 2005 that addressed the notice elements and was sent prior to the initial AOJ decision in this matter. The letter informed the appellant of what evidence was required to substantiate the claim for service connection and of the appellant's and VA's respective duties for obtaining evidence. The appellant was also asked to submit evidence and/or information in his possession to the AOJ.

The notice letter sent with the May 2006 rating decision included the notice provisions pertaining to how VA assigns disability ratings and effective dates as set forth in Dingess v. Nicholson, 19 Vet. App. 473 (2006). Although this notice was not sent prior to the initial decision, the Board finds that this error was not prejudicial to the appellant because the actions taken by VA after providing the notice have essentially cured the error in the timing of notice. Not only has the appellant been afforded a meaningful opportunity to participate effectively in the processing of his claim and given ample time to respond, but the AOJ also readjudicated the case by way of an April 2007 statement of the case and supplemental statements of the case in July 2007, June 2009 and June 2011 after the notice was provided. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006) (where notice was not provided prior to the AOJ's initial adjudication, this timing problem can be cured by the Board remanding for the issuance of a VCAA notice followed by readjudication of the claim by the AOJ) see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as an SOC or SSOC, is sufficient to cure a timing defect). For these reasons, it is not prejudicial to the appellant for the Board to proceed to finally decide this appeal as the timing error did not affect the essential fairness of the adjudication. Therefore, the Board concludes that the requirements of the notice provisions of the VCAA have been met, and there is no outstanding duty to inform the Veteran that any additional information or evidence is needed. Quartuccio, 16 Vet. App. at 187.

VA also has a duty to assist the veteran in the development of the claim. This duty includes assisting the veteran in the procurement of service treatment records, pertinent medical records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2010). 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the appellant. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained service treatment records, DD Form 214, private medical records and VA medical records. The Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. A VA opinion with respect to the lumbar spine issue on appeal was obtained in September 2010. 38 C.F.R. § 3.159(c)(4). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Here, the Board finds that the VA examination along with the supplemental opinion obtained in this case pertaining to the lumbar spine disability were sufficient, as they were predicated on a full reading of the Veteran's service and post-service VA medical records. The examiner considered all of the pertinent evidence of record, the statements of the appellant, and provided an explanation for the opinion. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4). The Board further finds that the RO complied with its May 2010 Remand as to the lumbar spine disability. Stegall v. West, 11 Vet. App. 268 (1998). 

Significantly, neither the appellant nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. Hence, no further notice or assistance is required to fulfill VA's duty to the appellant in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all of the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claims. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the veteran. 38 C.F.R. § 4.3 (2010). If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2010); Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110 (West 2002); 38 C.F.R. § 3.303(a) (2010). This may be shown by affirmative evidence showing inception or aggravation during service or through statutory presumptions. Id. 

To establish direct service connection for a claimed disorder, there must be (1) medical evidence of current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997); Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. See 38 C.F.R. § 3.303(b) (2010). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. 

Where a veteran served 90 days or more during a period of war or during peacetime service after December 31, 1946, and a chronic disease such as arthritis manifests to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. § 1101, 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309 (2010). 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2010).

The Board notes that the Veteran is a combat Veteran. The DD Form 214 shows that the Veteran is in receipt of the Combat Infantry Badge. A combat veteran's assertions of an event during combat are to be presumed if consistent with the time, place and circumstances of such service. 38 U.S.C.A. § 1154(b); Collette v. Brown, 82 F.3d 389 (Fed. Cir. 1996). However, 38 U.S.C.A. § 1154(b) can be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was incurred or aggravated in service, not to link the claimed disorder etiologically to the current disorder. See Libertine v. Brown, 9 Vet. App. 521, 522-23 (1996). Section 1154(b) does not establish service connection for a combat veteran; it aids him by relaxing the adjudicative evidentiary requirements for determining what happened in service. A veteran must still establish his claim by competent medical evidence tending to show a current disability and a nexus between that disability and those service events. See Gregory v. Brown, 8 Vet. App. 563, 567 (1996); see also Kessel v. West, 13 Vet. App. 9, 17-19 (1999). Here, the Veteran's account of his exposure to cold in Korea is consistent with the time, place and circumstances of his service. Therefore, his exposure to cold weather is presumed. 

In this case, the Veteran has a current diagnosis of a lumbar spine disability. In August 2001, a MRI of the Veteran's lumbar spine revealed that the major abnormality was at L4-5, where there was marked facet degeneration and diffuse disc bulging with marked central and lateral recess stenosis. There was less marked central stenosis present at L5-S1 and L3-4. There was mild to moderate neural foraminal stenosis at L5-S1. Additionally, in an x-ray of the lumbar spine in January 2002 revealed first degree spondylolisthesis of L4-5, mild degenerative disc disease of L3-4 and moderate to marked degenerative disc disease of L5-S1. In August 2005, the Veteran underwent a lumbar laminectomy at L3-S1. In July 2005, an MRI revealed disc bulging at L5-S1, central to the left disc bulging at L4-5, facet arthropathy at L3-L4 and L4-5 to S1, severe stenosis at L4-5 and moderate stenosis at L3-4 and L5-S1. As such, the objective medical evidence of record shows that the Veteran has a lumbar spine disability. 

The Board has reviewed the entire claims file, including the service treatment records. The service treatment records show that in October 1950, an examination of the Veteran's spine revealed no significant abnormality. In the separation examination in December 1952, the Veteran's spine was clinically evaluated as normal. 

A private x-ray of the spine in August 1995 revealed degenerative spondylosis of the lumbar spine. The VA and private medical records show further complaints of and treatment for lower back pain since 2001. 

In a July 2010 VA Compensation and Pension Examination, the VA examiner reviewed the claims file and examined the Veteran. The examiner reviewed the Veteran's prior medical history and military history. It was noted that the Veteran served in combat in Korea in 1951-1952. The Veteran reported that in January 1952 he was sent to Korea when he camped outside for 4 days, sustaining cold injuries. The Veteran reported that he was unable to state when he began to have pain in the lower back. He denied any original injury to his lower back on active duty. After physical examination and review of the x-rays, the Veteran was diagnosed with severe degenerative arthritis of the lumbar spine, without radiculopathy. 

In a September 2010, the same VA examiner provided an opinion regarding the Veteran's lumbar spine. The examiner provided that the claims file record did not reveal any treatment for a spine condition in service and the Veteran did not know when his back pain began. The Veteran denied any original injury to his back in service. There was also no documentation of lower back pain until 2001 in the claims file. Radiographic examinations revealed a previous laminectomy with moderate to severe degenerative disc disease of the lumbar spine. The examiner found that there was no evidence to support that the degenerative changes of the lumbar spine would be secondary to a cold injury because there was a 50 year gap between military discharge until the mention of back pain in the records. Further, the Veteran only reported cold injury in the hands in July 2010. The examiner concluded that a cold injury would not cause lumbar spine degenerative changes, therefore, the examiner opined that the Veteran's current degenerative changes of the lumbar spine were not caused by or secondary to any injury or disease incurred in service. As such, the lumbar spine condition would not be caused by or a result of the Veteran's exposure to cold weather as a combat Veteran in Korea in 1952. 

Based on the foregoing, the Board finds that service connection is not warranted. Initially, the Board notes that there is no medical evidence depicting symptoms of or a diagnosis of degenerative disc disease of the lumbar spine within one year after separation from service. Therefore, service connection cannot be presumed. See 38 C.F.R. §§ 3.307, 3.309.

Additionally, although there is a current diagnosis, the service treatment records do not show a chronic disability in service. After presuming that the Veteran was exposed to cold weather as he described, the separation examination does not show a lumbar spine disability. In fact, the clinical examination of the Veteran's spine in 1952 was normal. Therefore, even after conceding his exposure to cold, a chronic disability was not shown to have been incurred in service. 

Further, the evidence of record does not show that there was continuity of symptomatology since service. After service, the first documentation of problems in the lumbar spine was in the 1995 x-ray and that Veteran received chiropractic treatment at that time. The Board also notes that the Veteran has not alleged continuity. In this case, the Veteran's statements in the treatment records show that his back pain began approximately in 1995. The VA treatment records show that his complaints began in 2001. This lapse in time weighs against the Veteran's claim. See Maxon v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (ruling that a prolonged period without medical complaint can be considered, along with other factors, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability). Therefore, the Board concludes that the evidence of record does not establish continuity of symptomatology of a lumbar spine disability since service. 

The Board also notes that the evidence of record does not show a nexus between the current back disability and an incident service. The private and VA treatment records provide treatment for the back disability, but do not address its etiology. In the VA examination, the VA examiner considered the Veteran's statements of cold exposure in service and did not find that the Veteran's back disability was related to service, including cold exposure. In fact, the examiner found that cold exposure would not have caused the degenerative changes in the lumbar spine and there was no other injury in service that caused his current disability. 

While the Board acknowledges the Veteran's statements that he believes a cold injury caused his current disability, the objective evidence does not support this contention. While a lay statement could, in certain circumstances, constitute competent nexus evidence, in the instant case, the Board finds that the question regarding the potential relationship between the Veteran's cold injuries in service and the current diagnosis to be complex in nature. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009), Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). As such, the Board finds the Veteran's statements regarding a nexus between his current lumbar spine disability and exposure to cold in service to be of little probative value as he is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994); Espiritu v. Derwinski, 2 Vet. App. 492 (1992). Therefore, the Board affords greater probative weight to the VA examiner's findings than the Veteran's contentions. 

In summary, the Board has considered the available evidence of record, the Veteran's statements and afforded the benefit of the doubt to the Veteran. The evidence, however, does not show a chronic disability in service, continuity of symptomatology or a nexus between the current disability and service. As such, the Board finds that the evidence of record preponderates against the Veteran's claim for service connection. Therefore, service connection for the lumbar spine disability is denied. See 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Service connection for a lumbar spine disability is denied. 


REMAND

In this case, the Veteran's exposure to cold weather in Korea is presumed because he is a combat Veteran. See 38 U.S.C.A. § 1154(b). Further, the Veteran is already service connected for cold injury residuals to his bilateral lower extremities. 

In the May 2010 Remand, the Board requested that that RO provide the Veteran with a VA Compensation and Pension Examination for his claim for service connection for cold injury residuals to the upper right and left extremity. The Board specifically requested that the VA examiner provide a complete rationale for all conclusions and opinions. The Veteran was afforded a VA examination in July 2010 in which the VA examiner provided an opinion; however, no rationale was provided. See Nieves- Rodriguez v. Peake, 22 Vet. App. 295 (2008) (a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (a medical opinion must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions).

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As the VA examiner failed to provide a rationale for the conclusion as requested in the remand directives, the Board finds that the VA opinion regarding the cold injury residuals of the Veteran's upper extremities is inadequate. Therefore, the VA examiner should be provided with an opportunity to explain the opinion provided, if possible, or new VA examination is warranted. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. The VA examination should be returned to the same VA examiner, if possible, to provide a rationale for the opinion provided. 

If the same VA examiner is not available, the Veteran should be scheduled for another VA examination with the appropriate medical specialist to determine the nature and etiology of any cold injury residuals to the bilateral upper extremities. The claims file must be made available to and reviewed by the examiner in conjunction with the examination, and the examination report should reflect that such a review was made. All pertinent symptomatology and findings should be reported in detail. Any indicated diagnostic tests and studies should be accomplished. The examiner should state whether the Veteran's disability is more likely than not (i.e., probability greater than 50 percent), at least as likely as not (i.e., probability of 50 percent), or less likely than not (i.e., probability less than 50 percent), causally or etiologically related to or aggravated by active service. 

Specifically, the examiner should include whether a disability is related to exposure to extreme cold during the Veteran's combat service in Korea in 1952. In rendering an opinion, the examiner must discuss the Veteran's report, if any, of a continuity of symptoms since service. Any opinion expressed should be accompanied by supporting rationale. 

2. The RO should then readjudicate the issue on appeal. If the determination remains unfavorable to the Veteran, the RO should issue a supplemental statement of the case that contains notice of all relevant actions taken, including a summary of the evidence and applicable law and regulations considered pertinent to the issue. An appropriate period of time should be allowed for response by the Veteran and his representative. Thereafter, the case should be returned to the Board for further appellate consideration, if in order. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).



______________________________________________
John E. Ormond, Jr.
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs