Citation Nr: 1736731 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-26 600 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to an initial disability rating in excess of 20 percent for status-post infection and scarring of right eye, status-post corneal transplant.

2. Entitlement to service connection for residuals of right shoulder/arm injury.

3. Entitlement to service connection for gastroesophageal reflux disease (GERD).


REPRESENTATION

Appellant represented by: The American Legion


WITNESSES AT HEARING ON APPEAL

The Veteran and the Veteran's mother.


ATTORNEY FOR THE BOARD

J. Wozniak, Associate Counsel


INTRODUCTION

The Veteran served in the U.S. Army from March 2004 to June 2004 and from October 2004 to January 2006. The Veteran served in Iraq in support of Operation Iraqi Freedom. 

This matter came before the Board of Veterans' Appeals (Board) on appeal from a September 2007 decision of the Chicago, Illinois, Regional Office (RO). The RO in Des Moines, Iowa has current jurisdiction. In March 2016, the Board remanded the appeal to the RO for additional development.

An April 2010 RO decision increased the Veteran's disability rating for a right eye disability from 10 percent to 20 percent effective January 2006, the first day following his service discharge. 

In January 2014, the Veteran was afforded a video conference hearing before the undersigned Veterans Law Judge. A hearing transcript is in the record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue(s) of right eye, status-post corneal transplant is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).





FINDINGS OF FACT

1. Residuals of right shoulder/arm injury did not originate during active service.

2. GERD originated during active service.


CONCLUSIONS OF LAW

1. The criteria for service connection for residuals of right shoulder/arm injury have not been met. 38 U.S.C.A. §§ 1110, 1154(b), 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).

2. The criteria for service connection for GERD have been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service connection may be granted for current disability arising from disease or injury incurred or aggravated by active service. 38 U.S.C.A. § 1110. Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).




A. Residuals of right shoulder/arm injury

The Veteran had a post-service shoulder injury. An October 2006 VA treatment note indicates the Veteran was in a motor vehicle accident in March 2006 and has experienced pain, tingling, weakness, and difficulty with certain movements in his right shoulder since the accident. Service treatment records (STRs) are silent for complaints of shoulder pain and the first medical evidence mentioning a shoulder injury refers to the March 2006 motor vehicle accident which occurred after service separation. 

STRs from October 2005 indicate the Veteran experienced two separate IED explosions while in Iraq. The STRs indicate the Veteran experienced unsteady gait, a contusion to his right elbow, ringing in the ears, dizziness, and nausea. However, there is no mention of a right shoulder injury or pain in the right shoulder. 

In June 2007, the Veteran was afforded a VA examination. The examiner noted the Veteran's right shoulder injury occurred in a motor vehicle accident in March 2006, after service separation. The Veteran stated he was seated on the passenger side with no seat belt in a truck travelling approximately 70 miles per hour when the truck hit a ditch and then collided with a telephone pole. The Veteran noted stiffness and decreased range of motion starting after the motor vehicle accident. 

In the Veteran's January 2014 hearing testimony he discussed experiencing two separate improvised explosive device (IED) explosions while in Iraq. He noted the first blast caused him to flip the vehicle he was driving and he landed on his shoulder. In a second incident the Veteran reported that he was outside the vehicle and the explosion knocked him up against a barrier. 

In March 2017, the Veteran submitted a number of lay statements from friends and family discussing the IED explosions he experienced and the resulting changes in his behavior but there is no discussion of a shoulder injury. The Veteran also submitted his own lay statement which generally indicates that he experiences chronic pain in a number of areas including his shoulder but does not provide information regarding the origin of his shoulder pain.

In March 2015, the Veteran was afforded a VA examination. The Veteran reported an initial manifestation of shoulder pain in March 2006 following a car accident. The examiner noted a February 2014 shoulder scope for a labral debridement and repair and stated that the Veteran has been doing very well since the surgery and has completed physical therapy. 

For injuries alleged to have been incurred in combat, 38 U.S.C.A. § 1154(b) provides a relaxed evidentiary standard of proof to grant service connection as to the in-service event. Collette v. Brown, 82 F.3d 389 (1996). Under the statute, in the case of any veteran who has engaged in combat with the enemy in active service during a period of war, satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, condition or hardships of such service, even though there is no official record of such incurrence or aggravation. Every reasonable doubt shall be resolved in favor of the Veteran. 38 U.S.C.A. § 1154(b) (West 2002); 38 C.F.R. § 3.304(d) (2010).

However, 38 U.S.C.A. § 1154(b) can be used only to provide a factual basis upon which a determination could be made that a particular disease or injury was incurred or aggravated in service, not to link the claimed disorder etiologically to the current disorder. See Libertine v. Brown, 9 Vet.App. 521, 522-23 (1996). Section 1154(b) does not establish service connection for a combat veteran; it aids him by relaxing the adjudicative evidentiary requirements for determining what happened in service. A veteran must still generally establish his claim by competent medical evidence tending to show a current disability and a nexus between that disability and those service events. Gregory v. Brown, 8 Vet.App. 563 (1996).

The Veteran served in combat, and his account of what occurred during this service is presumed credible. However, assuming the credibility of the Veteran's account of the in-service events, there is no competent medical evidence linking his shoulder disorder to his service. 

As noted, the reduced evidentiary burden of 1154(b) only applies to the question of service incurrence, and not to the question of either current disability or nexus to service, both of which generally require competent medical evidence. See Brock v. Brown, 10 Vet.App. 155 (1997); Beausoleil v. Brown, 8 Vet.App. 459 (1996). 

The Board has considered the Veteran's assertions that his right shoulder disability is caused by his military service. The Veteran is not competent, however, to offer an opinion as to the etiology of this type of injury due to the medical complexity of the matter involved. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

A preponderance of the evidence is against a finding that the Veteran's right shoulder injury originated during service. The Veteran was first seen for his right shoulder in March 2006, two months after service separation, immediately after involvement in a motor vehicle accident. No competent medical provider has opined that the Veteran's right shoulder disability began in or as a result of service.

Therefore, service connection is not warranted and the claim is denied.

B. Gastroesophageal Reflux Disease

A veteran who served after December 31, 1946, is presumed to be in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious and manifest) evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by such service. Only such conditions as are recorded in the examination reports are to be considered as noted. 38 U.S.C.A. §§ 1111, 1137; 38 C.F.R. § 3.304. 

The presumption of soundness attaches only where there has been an induction examination in which the later complained-of disability was not detected. See Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991). The provisions of 38 C.F.R. § 3.304(b) clarify that the term "noted" denotes "[o]nly such conditions as are recorded in the examination reports" and that "[h]istory of pre-service existence of conditions recorded at the time of examination does not constitute a notation of such conditions." Crowe v. Brown, 7 Vet. App. 238, 245 (1994); see also Cotant v. Principi, 17 Vet. App. 116 (2003). 

When no preexisting condition is noted upon entry into service, a veteran is presumed to have been found sound upon entry. The burden then falls on the Government to rebut the presumption of soundness by clear and unmistakable (obvious or manifest) evidence that the veteran's disability was both preexisting and not aggravated (i.e., increased in severity beyond its natural progression) by service. If this burden is met, then the veteran is not entitled to service connection benefits. However, if the Government fails to rebut the presumption of soundness under section 1111, the veteran's claim is one for service connection. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004).

In his September 2003 report of medical examination and history the Veteran generally noted he would "become nervous in places he is not familiar with," but reported no other relevant medical treatment or history. The examination report also noted no history of stomach, liver, or intestinal trouble.

The Veteran has been diagnosed with GERD. A June 2007 VA examination notes the Veteran's GERD began in 2005 while the Veteran was serving in Iraq. An April 2005 service treatment record (STR) states the Veteran had complaints of diarrhea and vomiting, including a report that the vomit was "bloody looking." STRs throughout the Veteran's service indicate reports of nausea, vomiting, and loose stools. 

During the June 2007 VA examination the Veteran reported that his gastrointestinal condition began in 2005 while serving in Iraq. The Veteran indicated that he felt nauseated constantly, vomited several times weekly, including when he felt "more stressed out," had a decreased appetite, and lost approximately 25 pounds. He stated that he vomited several times a week, and that he had similar symptoms beginning at age 15.

In March 2009, the Veteran was afforded a VA examination. The Veteran reported that GERD was noted during his basic training, and attributed to "nerves," and that he had an episode of bleeding in 2006 from emesis with a clinical diagnosis of a torn esophagus. The examiner concluded the Veteran had a current diagnosis for GERD

In July 2016, the Veteran was afforded a VA medical opinion. The VA examiner reviewed the Veteran's entire medical file and opined that the Veteran's GERD pre-dated his military service. The examiner cited statements attributed to the Veteran after he joined the service indicating that he began experiencing nausea and vomiting when stressed at age approximately age 15. The examiner also discussed the Veteran's heavy alcohol use beginning at approximately age 14 as a cause for the Veteran's continued vomiting. There are no available medical records which pre-date the Veteran's military service to definitively establish the presence of GERD prior the Veteran's enlistment. The examiner did not respond to an inquiry from the Board's March 2016 remand regarding whether the Veteran's GERD was aggravated or permanently worsened by military service. The examiner also concluded the Veteran's GERD was not caused or aggravated by the Veteran's service connected PTSD and TBI. 

Based on the record developed, the Veteran is presumed to have been in sound physical condition at the time he entered active service, and there is no clear and unmistakable evidence to rebut the presumption of soundness. The Veteran's mere mention of a pre-service history is not sufficient to rebut the presumption, and the physician's observation may not be as that which cannot be misinterpreted and misunderstood, i.e., it is undebatable." Vanerson v. West, 12 Vet. App. 254, 258 (1999) (citing Webster's New World Dictionary 1461 (3rd Coll. ed. 1988) (other citations omitted). 

The Board will grant the appeal. The Veteran is presently competent as a layperson to assert that his GERD began in service following his experiences in the Army generally, and in Iraq specifically. He was treated while on active service for symptoms consistent with the disorder and there is no competent medical evidence against the claim. Service connection for GERD is granted.
ORDER

Service connection for residuals of right shoulder/arm injury is denied.

Service connection for gastroesophageal reflux disease (GERD) is granted.


REMAND

Remand is necessary to resolve a conflict in the medical evidence regarding the Veteran's diplopia, specifically whether the Veteran experiences diplopia constantly or occasionally. 

The case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain an addendum opinion from the same examiner who conducted the March 2015 right eye VA examination. If the examiner is not available, have the file reviewed by a similarly-qualified examiner. If necessary to respond to the inquiries below, schedule the Veteran for a VA examination to obtain an opinion. The entire claims file should be made available to and be reviewed by the examiner, and it should be confirmed that such records were available for review. An explanation for all opinions expressed must be provided.

The examiner should address the following:

a. Does the Veteran have diplopia and if so, is it present at all times? Please explain the discrepancy between the Veteran's assertions that his diplopia is "present all the times," and the conclusion of the March 2015 VA examiner that he has "occasional diplopia."

b. If the Veteran does have diplopia, Is it correctable with standard spectacle correction? 

The examiner's attention is drawn to the following:

*March 2009 VA examination that indicated the Veteran did not have diplopia. (VBMS Document: 03/23/2009 VA Examination)

*March 2015 visual field testing which indicated the Veteran has diplopia that is present "all the time" and is more vertical than horizontal. (VBMS Document: 03/25/2015 Medical Treatment Record - Non-Government Facility)

*March 2015 VA examination that indicates the occasional presence of diplopia and indicates it is correctable with standard spectacles. (VBMS Document: 03/07/2015 C&P Exam)

*Please review all other relevant evidence to develop a complete picture of the history of this Veteran's diplopia.

2. Readjudicate the issue on appeal. If the benefit sought on appeal remains denied, the Veteran should be provided a supplemental statement of the case (SSOC). An appropriate period of time should be allowed for response before the case is returned to the Board.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
Vito A. Clementi
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs